## Davis v. Larguier et al.

Country merchants acting as mere forwarding agents for the neighbouring planters, charging no commission for their services, but getting an indirect compensation in the patronage and good will of the planters in the business of their country store, by whom cotton has been shipped to a merchant for sale, are liable only for reasonable prudence in the selection of

the merchant, and for the payment of the proceeds when received; they cannot be made responsible for any loss resulting from the dishonesty of the person to whom the cotton was shipped, if reputed at the time to be honest and solvent.

DAVIS
v.
LARGUIER.

APPEAL from the District Court of East Baton Rouge, *Johnson*, J.

G. S. *Laeey*, for the plaintiff. *Brunot*, for the appellants, cited Story on Agency, §84 (notes), 87, 89, 90, 96, 97, 106, 110, 111. Civil Code, arts, 2969, 2975, 2977, 2987. 6 Mart. N. S. 259. 8 Ib. N. S. 115—464. 8 La. 536, 11 La. 286. 4 Robinson, 109.

The judgment of the court was pronounced by

SLIDELL, J. It appears that *Larguier & Son* were merchants or country storekeepers, at Baton Rouge, and that the plaintiff, a planter, placed fifteen bales of cotton in their hands. This cotton *Larguier & Son*, shipped, under bills of lading in their own name, to one *Laudumiez*, a merchant in good repute at New Orleans. *Laudumiez* sold this cotton, and suddenly, and to the surprise of his mercantile friends at New Orleans, among whom he had been up to that time considered a solvent and upright man, absconded, and never accounted to the defendants for the proceeds. It appears also, that *Laudumiez* and *Larguier & Son* had been in like business relations for some time previously, and this was the first occasion on which any want of punctuality or dishonesty had been shewn. The plaintiff seeks to make *Larguier & Son* liable for the value of the cotton.

The allegations of the plaintiff's petition, which was not filed until four years after *Laudumiez* absconded, are very vague and general. After stating that the defendants are commercial partners, doing business at Baton Rouge, he charges that they are indebted to him in the sum of $480, "for this, to wit: that the said *Larguier & Son*, in the latter part of 1839, or the beginning of 1840, received from your petitioner fifteen bales of cotton, the average weight of which was about four hundred pounds per bale, that the same has been disposed of by the said *Larguier & Son*, for and on their account, whereby they have become liable to your petitioner for the value of the same," as per account annexed. The account debits the defendants "with the proceeds of 15 bales cotton delivered to you, and for the amount of which you are responsible, weight averaging, &c., $480."

To these loose averments the defendants answered in substance, that they received the cotton as agents, to effect a sale in New Orleans; that they consigned it to *Laudumiez*, a merchant at that place in good credit at that time, who soon after absconded, and never accounted for the proceeds.

The evidence offered by the plaintiff has failed to satisfy our minds of the liability of the defendants. Two or three witnesses have been examined by the plaintiff, who seem to have had a like interest to make the defendants liable; their testimony in itself is not very coherent, and they do not depose as to the relations of this plaintiff with the defendants, but their own. The only witness who pretends to state the relations of the parties before us, gives an account of the matter which is not such, in our opinion, as to fix a clear liability on the defendants. He states that his own cotton and the plaintiff's, were delivered to the defendants at the same time. On his direct examination the only explanation he gives, tending to exhibit the nature of the business is, that, the defendants were merchants, plaintiff's cotton was delivered to them on account of plaintiff, and *left with defendants to be accounted for*. On his cross examination he states, that he left his own cotton with them, " to be done with as they

thought proper, and looked to them for the proceeds. That they were in the habit of selling witness's cotton, and accounting to him for the proceeds. That Davis's cotton was to be sold in the same manner with his. That he was in the habit of taking his cotton to *Mr. Larguier*, who he believes was in the habit of sending it to New Orleans for sale ; and that after witness delivered his cotton to defendants, he looked to them alone for the proceeds.'' Neither this witness, nor any of the others, say that the defendants ever charged any commission for their services, nor does it appear that the defendants divided commissions with the New Orleans consignee. It also appears that the planters did not expect, in former transactions, to receive any thing from the defendants till their cotton was sold in New Orleans, and would call from time to time to make enquiries, and when the proceeds came to the defendants, they were paid over. It is obvious that the intention of all the parties must have been, not that the cotton should be disposed of in the village, but that it should be shipped for sale to the great mart at New Orleans. That the defendants should have made themselves the guarantors of sales and safe returns, not only without a *del credere* commission, but without any commission at all, is a proposition too strange to be adopted upon the loose evidence submitted to us.

There is much reason to believe, from a consideration of the whole case, that the defendants were mere forwarding and intermediary agents, transacting this business for the neighbouring planters, without commission, for their accommodation, and getting an indirect return in the patronage and good will of the planters, in the business of their country store ; that, as such agents, they were liable for reasonable prudence in the selection of the New Orleans merchant, and for the payment of proceeds when received ; that in the present case they have acted with good faith, and, under the evidence presented, ought not to suffer for *Laudumiez's* dishonesty.

It is therefore decreed that the judgment of the court below be reversed, and that there be judgment for the defendants, with costs in both courts.